**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**FRAMELINE, LLC,**

Petitioner,

v.

**STATE FARM FIRE AND CASUALTY COMPANY,**

Respondent.

---

**PETITION TO APPOINT UMPIRE FOR
PROPERTY INSURANCE APPRAISAL**

---

## I.    INTRODUCTION

1.    Petitioner Frameline respectfully petitions this Court to appoint an insurance appraisal umpire pursuant to a builders risk policy issued by State Farm Fire and Casualty Company ("State Farm").

2.    This matter involves an insurance claim for property damage at a building owned by Frameline, located at 4225 E Hale Parkway, Denver, Colorado 80220 (the "Property"). The Property was insured under a builders risk policy of insurance issued by State Farm, Policy No. 96-EV-Q981-3 (the "Policy").

3.    The loss involves damage arising from a water leak that occurred on or about December 4, 2024, to the Property while it was still under construction. The water leak caused extensive damage to multiple residential units and common areas across several floors of the building, requiring water mitigation, demolition and replacement of drywall, electrical wiring and devices, HVAC systems, flooring, appliances, and cabinetry.

4.　　　After State Farm and Frameline could not agree on the amount of loss, Frameline invoked the appraisal provision of the Policy, and each side selected an appraiser. The appraisers have reached an impasse as they could not agree on a suitable umpire. Frameline now brings this petition to appoint an appraisal umpire under the Policy.

## II.　　PARTIES AND JURISDICTION

5.　　　Petitioner Frameline is a Delaware limited liability company with its principal place of business in Denver, Colorado. At all relevant times, no individual or corporate owner of Frameline is or was a citizen of Illinois.

6.　　　Respondent State Farm Fire and Casualty Company is a stock insurance company incorporated in the State of Illinois with its home offices at One State Farm Plaza, Bloomington, Illinois 61710. State Farm is now and was at all relevant times a citizen of the State of Illinois for purposes of diversity jurisdiction.

7.　　　This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Frameline's preliminary analysis identifies approximately $1,210,018.39 in unpaid invoice amounts presently at issue, which well exceeds the jurisdictional threshold. *See, e.g., Cont'l Cas. Co. v. Kidney Real Estate Assocs. of Arvada, LLC*, No. 18-cv-00551-CMA-KLM, 2018 WL 6268418, at *9 (D. Colo. Nov. 30, 2018) (holding that the $75,000 amount-in-controversy requirement was met for a petition to appoint an insurance appraisal umpire where the disputed difference in estimates exceeded that threshold).

8.　　　Jurisdiction is also proper pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, which provide for the filing of matters seeking declaratory relief. There are ongoing controversies that include disputes over the value of loss to the Property and the appointment of a neutral insurance appraisal umpire. Invocation of the appraisal is premised on the existence of a

contractual dispute between the parties. *See, e.g., Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1156-57 (D. Colo. 2015) (determining, in a declaratory judgment action, the guidelines to govern the appraisal process, including the involvement of an umpire by selection of a judge if necessary); *see also Krum v. Chubb Ltd.*, No. 20-cv-03616-RM-GPG, 2021 WL 1564794 (D. Colo. Apr. 21, 2021); *Continental Cas. Co. v. Kidney Real Estate Assocs. of Arvada, LLC*, No. 18-cv-0051-CMA-KLM, 2019 WL 851120 (D. Colo. Feb. 22, 2019).

9.      This Court has personal jurisdiction over Respondent because State Farm is authorized to do business in the State of Colorado, conducts business in the State of Colorado, and the Policy was issued for property located in the State of Colorado.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this petition occurred in the State of Colorado, including the issuance of the Policy, the occurrence of the loss, and the appraisal process. The Property is located in Denver, Colorado, and the claim concerns damage to that Colorado property.

## III.    FACTUAL BACKGROUND

11.     Frameline owns the Property located at 4225 E Hale Parkway, Denver, Colorado 80220, insured under the Policy.

12.     The Policy is a builders risk policy issued by State Farm, with Coverage A – Buildings limits of $24,000,000. The Policy period is March 15, 2024 to March 15, 2025.

13.     On or about December 4, 2024, while the Property was still under construction, the Property sustained damage from a water leak. The water leak caused extensive damage to multiple residential units and common areas across several floors of the building, requiring water mitigation, demolition and replacement of drywall, electrical wiring and devices, HVAC systems, flooring, appliances, and cabinetry.

14. Frameline reported the loss to State Farm on December 6, 2024, and State Farm established claim number 06-77S8-41G.

15. Following inspection of the Property, State Farm prepared its estimate of loss and, after deducting the applicable deductible, issued payment for what State Farm determined to be the actual cash value of the loss. However, State Farm's payment fell significantly short of the loss Frameline actually sustained.

16. Since at least early 2025, Frameline repeatedly submitted contractor invoices and supporting materials for the claim. Despite multiple requests, State Farm has failed to provide a complete, line-by-line accounting of which invoiced repair costs State Farm paid in full, paid only in part, or denied entirely, and the reasons for each decision.

17. Frameline's preliminary analysis identifies approximately $1,210,018.39 in unpaid invoice amounts presently at issue. These figures are preliminary and subject to further analysis by Frameline's appraiser and, if necessary, an umpire.

18. State Farm's position on the unpaid invoice amounts, to the best of Frameline's understanding, is that such amounts were not reasonably incurred to repair or replace the covered property and, hence, the value of that portion of the loss is zero.

19. On April 30, 2026, State Farm received Frameline's written demand for appraisal through Frameline's designated appraiser, David Phalen of Consistent Claim Services. *See* Exhibit 7.

20. State Farm's immediate response to Frameline's appraisal demand on May 8, 2026, was to demand the "exact dollar amount that is being requested above what has been approved by us," along with a "detailed breakdown" on the additional items requested. *See* Exhibit 8.

21. Frameline responded with a detailed letter on May 20, 2026, explaining that the Policy's appraisal clause had been properly triggered and that no other conditions precedent remained before the appraisal process could begin. *See* Exhibit 9.

22. State Farm responded on May 26, 2026, with a letter confirming its engagement in the appraisal process and designating Jesse Wendt of Simos Claims, Inc. as its appraiser. *See* Exhibit 10.

23. Mr. Wendt contacted Mr. Phalen on May 26, 2026, and by the following day, May 27, 2026, Mr. Phalen and Mr. Wendt had exchanged their proposed appraisal umpires.

24. It has been more than fifteen days since the parties' designated appraisers have exchanged umpire candidates. The parties have been unable to agree on an umpire within the fifteen-day period provided by the Policy.

25. As the appraisers have been unable to agree on whom to appoint as the umpire, Frameline respectfully requests that this Court select and appoint an umpire for the appraisal process pursuant to the terms and conditions of the Policy.

## IV.    THE APPRAISAL CLAUSE

26. The Policy contains the following appraisal provision, found at Section I – Conditions, ¶ 1.b.:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> (1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

*See* Exhibit 1, Policy Excerpts, at Section I – Conditions, ¶ 1.b.

27. The parties have completed the appraiser selection process, and the appraisers have not been able to agree on an umpire. As such, either party may request that the selection be made by "a judge of a court having jurisdiction." Because the Property is located in Denver, Colorado, and there is subject matter jurisdiction, this Court is the appropriate venue to seek appointment of an umpire.

## V. ARGUMENT IN SUPPORT OF APPOINTMENT OF INSURANCE APPRAISAL UMPIRE

### A. The Court Should Appoint An Insurance Appraisal Umpire Qualified To Evaluate The Appraisers' Appraisals And Resolve Their Differences.

The purpose of an insurance appraisal is to determine the amount of loss sustained from a specific cause, including the means and methods, and associated costs, to restore the insured property to its pre-loss condition. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1102-03 (D. Colo. 2015). Colorado courts have long recognized that appraisal provisions are enforceable and provide "a plain, speedy, inexpensive and just determination of the extent of the loss." *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 432 (Colo. App. 2018). A benefit of the appraisal clause is that it gives the parties the option of having the damages determined by persons with expertise in the field as an alternative to judges and juries. *Owners Ins. Co. v. 2430 S. Havana, LLC*, No. 20-cv-01299-RBJ, 2020 WL 3839848, at *2 (D. Colo. July 8, 2020).

The Policy provides that, in the event the two appraisers cannot agree on the amount of loss, the appraisers will submit their differences to an umpire. Ex. 1, Section I – Conditions,

¶ 1.b.  Where the appraisers cannot agree on an umpire, the Policy provides for the court appointment of an umpire. *Id.*

The Colorado Division of Insurance provided guidance for how an appraisal umpire should be considered "fair, competent and impartial":

> 1. The umpire may not have an existing direct and/or material relationship with any party to the appraisal and must remain neutral.

> 2. The umpire must disclose to all parties in the appraisal process, any known facts that a reasonable person would consider likely to affect the impartiality of the umpire including:

>> (a) A financial or personal interest in the outcome of the appraisal; and

>> (b) A current or previous relationship with any of the parties to the agreement to appraise or the appraisal proceeding, their counsel or representatives, including licensed public adjusters, a witness, or another appraiser.

> 3. The umpire shall have a continuing obligation to disclose to all parties to the appraisal process any facts that the umpire learns after accepting appointment that a reasonable person would consider likely to affect the impartiality of the umpire.

> 4. The insurer including adjusters, insured and their representatives, including licensed public adjusters and/or attorney, and appraisers, must not have ex parte communications with the umpire during the appraisal process. The umpire shall not have any communication with the insurer including adjusters, insured and their representative, including public adjusters and/or attorneys and appraisers, without participation by both parties and/or their representatives.

CO Bulletin No. B-5.26, *Requirements Related to Disputed Claims Subject to Appraisal* (Oct. 26, 2015).

The umpire's primary role is "not to undertake a new, third appraisal, but to evaluate the appraisers' completed appraisals, and their differences. This is more akin to adjudicating competing experts' opinions than to preparing a third, independent opinion or appraisal." *PB Property Holdings, LLC v. Auto-Owners Ins. Co.*, No. 16-cv-1748-WJM-STV, 2018 WL 10879450, at *2 (D. Colo. Jan. 3, 2018). This role is "aptly filled by an arbitrator with experience

- 7 -

weighing parties' competing submissions, even when the subject matter is complex or technical."
*Id.*

An insurance appraisal umpire with experience assessing competing positions as a third-party neutral evaluator is also important to a fair appraisal. Moreover, the umpire should have subject-matter expertise with respect to the type of damage at issue, including the means and methods of repair and the costs associated with repair. *See 2430 S. Havana, LLC*, 2020 WL 3839848, at *3 (noting that it "makes sense," given the underlying purpose of appraisals, to appoint an umpire with property damage expertise). Courts have emphasized that an umpire with technical experience in the subject matter is "a valuable asset to both parties during the appraisal process." *Cont'l Cas. Co. v. Kidney Real Estate Assocs. of Arvada, LLC*, No. 18-cv-00551-CMA-KLM, 2019 WL 851120, at *3 (D. Colo. Feb. 22, 2019).

Here, the dispute involves water damage to a commercial building under construction, including damage to gypsum board, cabinets, insulation, HVAC, framing, and other building components. The parties require a fair, unbiased, competent, and impartial umpire who can review and understand applicable methods of repair and costs of construction related to the damaged Property.

**B. Each Of Frameline's Proposed Umpires Has The Requisite Experience To Weigh The Differences In The Appraisers' Competing Submissions And Resolve The Dispute Regarding The Amount Of Loss.**

Frameline proposes three highly qualified individuals, each with significant experience evaluating competing positions as a third-party neutral in insurance appraisal disputes. Each of the undersigned counsel has never retained or sought to retain any of the following individuals as an appraiser or umpire in any matter. Each candidate therefore possesses the qualifications to act as a competent and impartial umpire.

Frameline's independent appraiser, Mr. Phalen, has confirmed with each umpire candidate that he is available and has no conflicts with either of the parties to this dispute.

### 1. Judge Thomas Moorhead (Ret.)

Judge Thomas Moorhead is a former Chief Judge of the 5th Judicial District of Colorado who joined the Judicial Arbiter Group, Inc. ("JAG") in December 2013. While on the bench, Judge Moorhead handled a diverse docket in Eagle County that included complex civil actions involving construction defects, 106 reviews of land use and zoning approvals, medical malpractice, and family law. Prior to his appointment to the bench, Judge Moorhead served as Vail Town Attorney for eight years and then as Eagle County Attorney. His career began as a litigator prosecuting major felonies, followed by complex civil litigation including mass tort, environmental, employment law, and medical malpractice matters. In 2013, Judge Moorhead attended the National Judicial College Civil Mediation training and has been a regular presenter and judicial panel member at CLE programs.

Judge Moorhead has served as an umpire for nearly a decade and regularly works on multimillion-dollar umpiring projects. He is local to Colorado, is affiliated with JAG, and has no allegiance to either party. Judge Moorhead has also served as an umpire on prior occasions. His extensive judicial experience, including over a decade handling complex civil and construction defect cases, renders him eminently qualified to evaluate the competing appraisals in this matter. As U.S. District Judge R. Brooke Jackson observed, Judge Moorhead is "a highly respected former judge whose competence and impartiality [as an umpire] I do not remotely question." *Colo. Hosp. Servs., Inc. v. Owners Ins. Co.*, 2015 WL 4245821, at *3 (D. Colo. July 14, 2015). Judge Moorhead's CV is attached as Exhibit 2.

Frameline believes that Judge Moorhead would be the best choice to serve as an umpire in this case due to his long experience serving as a neutral and as an appraisal umpire.

### 2. Toby Johnson

Toby Johnson is the Principal and Founder of Omega Insurance Appraisals, based in Jackson, Tennessee. Mr. Johnson brings more than two decades of experience in property insurance claims, having handled more than 6,000 first-party insurance claims and personally evaluated more than 6,100 roof systems totaling more than 38 million square feet. Mr. Johnson holds the highest level of damage assessment certification offered by HAAG Engineering, earning the title of Master Level Certified Damage Inspector for Wind Damage, as well as Residential and Commercial Roofs. He is credentialed as a Level III Xactimate Subject Matter Expert, holds an Advanced Property Adjusting certification, and is certified by the Property Loss Appraisal Network ("PLAN"). PLAN is a selective national organization that certifies appraisers and umpires—its website lists only 137 approved appraisers nationwide.

Mr. Johnson has been designated as a court appointed neutral umpire on seventeen occasions across multiple jurisdictions, including courts in Florida, Iowa, Kansas, Kentucky, Michigan, North Carolina, Tennessee, Texas, and Wyoming. He has also been appointed as a neutral appraisal umpire by mutual agreement of both parties' appraisers on more than 250 occasions across multiple states. Mr. Johnson has also been recognized as an expert witness in both state and federal courts. Mr. Johnson is an active member of the Board of Directors of the Insurance Appraisal and Umpire Association and an accredited Continuing Education provider by the Florida Department of Financial Services specifically related to appraisal and umpire certification curriculum. Mr. Johnson works on multimillion-dollar losses regularly and has

experience as both an insurance company and policyholder claims adjuster, demonstrating balanced experience that supports his impartiality.

Mr. Johnson's CV and court appointment history are attached as Exhibits 3 and 4.

3. *Jason Pickett*

Jason Pickett of Pickett Consulting Services, based in Highlands Ranch, Colorado, possesses substantial experience in insurance appraisal and umpire services. Mr. Pickett's background includes more than 15 years of combined experience in insurance claims handling, including service as an insurance company Claims Manager overseeing 4,000 claims per year and as a Claims Adjuster and Administrator handling 500 claims per year. During his time working for various insurance carriers, Mr. Pickett attained his Associate in Claims (AIC) designation, which signifies specialized training and skills in handling various types of insurance claims.

As a property damage consultant, Mr. Picket works regularly with both policyholders and insurers, in addition to serving as an umpire. Through his significant experience working for both policyholders and insurance carriers throughout the country, Mr. Pickett has developed competence in neutral evaluation of the amount of loss in insurance claims. Mr. Pickett holds a Level 3 certification in Xactimate, which allows him to efficiently and effectively discern differences and issues in competing appraisal estimates. He also has over 30 years of experience in residential and commercial construction as a general contractor, giving him a deep understanding of the requirements for successful restoration project completion.

Notably, Mr. Pickett is local to Colorado and has been appointed as an umpire by courts in Colorado on multiple occasions. He was appointed by District Judge S. Kato Crews to serve as umpire in *Mederos v. Liberty Mutual Personal Insurance Company*, No. 1:23-cv-00760-SKC-

STV (D. Colo. Jan. 19, 2024), a Marshall Fire damage case in which the Court found Mr. Pickett to be competent and qualified. He was also appointed as umpire in *Apodaca v. Travelers Personal Insurance Co.*, Case No. 2025CV30012, District Court, Yuma County, Colorado, on September 4, 2025, and in *Ghukasyan v. General Security National Insurance Co.*, Case No. 2025CV32362, District Court, Denver County, Colorado, on December 1, 2025. Mr. Pickett's CV and prior court appointment records are attached as Exhibits 5 and 6.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Petitioner Frameline, LLC respectfully requests the Court:

1. Appoint Judge Thomas Moorhead (Ret.), Toby Johnson, or Jason Pickett to serve as umpire for this property insurance appraisal, consistent with the terms of the applicable insurance policy and governing law;

2. Order that the selected umpire must comply with the terms of the Policy and governing law, including the guidelines stated in CO Bulletin No. B-5.26;

3. Order that the selected umpire must not engage in *ex parte* communications with any party;

4. Order that the parties share umpire expenses equally, as required by the Policy;

5. Grant such other and further relief as the Court deems just and proper.

Frameline does not waive any contractual statutory, or extra-contractual rights by seeking appointment of an appraiser umpire.

Dated: June 23, 2026

Respectfully Submitted,

Christopher R. Mosley, #24440
Stephen C. Robin, #53773
Reed Smith LLP
1900 Lawrence Street, Suite 2800
Denver, CO 80202
Telephone:      303-552-3800
Email:             cmosley@reedsmith.com
                      srobin@reedsmith.com

*Attorney for Petitioner Frameline, LLC*